Judge Burnet’s
dissenting opinion:
The ground on which I dissent from the opinion of the court in this case is, that I can not consider a county, in its corporate capacity, as liable for the illegal conduct of its officers; and if it is not so liable, I do not perceive any ground on which this action can be sustained. There is no statute in this state, by which it is made responsible, and if there be any principle of-common law that can sustain the suit, it has escaped my observation. There is not any contract, either express or implied, subsisting between the plaintiff and the county of Brown, on which the claim can be founded, nor has the county, in its corporate capacity, been ■guilty of a tort to his prejudice. If the commissioners, by a willful omission of duty, have caused him an injury, they may be answerable for the consequences, *in an action properly framed for that purpose. The statute made it the duty of the commissioners to provide a sufficient jail, and gave them the means of doing so. They voluntarily accepted the trust, and if they have neglected to execute it, and by that negligence the plaintiff has been injured, the injury has not proceeded from the county, but has been occasioned by the illegal conduct of the commissioners, for which they are personally responsible.
Reference has been had to considerations of policy. If there be any weight in these arguments, they are better calculated for the legislative hall than for a court of justice. They might influence the legislature to provide a remedy, but they do not show that it already exists. It way, however, be fairly questioned whether good policy requires such a recourse. A county can not provide public buildings, in any other may than by the agency of its officers. If those officers may neglect their duty with impunity, as will be the case if they can transfer the consequences of their negligence to the county, a strong inducement to the faithful and punctual discharge of duty is lost. It will be a matter of but little moment, as it regards them personally, whether they provide a sufficient jail or not, if the consequence of their negligence is to operate on the public treasury, instead of their own purses. If considerations of policy can be properly used in a case like this, I incline to the opinion that it is better to lot the officers bear the consequences of their omissions of duty than invite them to such omissions, by providing an indemnity, or by suffering them to offend with impunity. It can not be good policy to remove incen *333 tives to duty. If it be said that cases of hardship may arise, in which.the commissioners are not chargeable with inexcusable neglect, so as to be personally liable it may be replied, that in such cases the sheriff, or other person injured by an escape, may petition for relief, with a fair prospect of success, if his claim be a meritorious one. But it does not follow that a legal right of recovery must exist for every loss attended with hardship. There are cases without number in which such losses are sustained, and the sufferers are destitute of a remedy, because there is no person legally bound to indemnify. It can not be overlooked, *however, that in the case before us, all the parties acted voluntarily and advisedly. The sheriff knew the situation of the public buildings when he accepted his office, and the defendant had the same knowledge when he caused his debtor to be imprisoned. The hardship, therefore, is not as good as it would seem at first view.
If the liability contended for really existed, it is a natural inference that some adjudged eases might be found to support it, but the research of counsel has not enabled them to produce a solitary ease, in which the funds of the county, or corporation, have been rendered liable for injuries sustained by the unauthorized, illegal, and tortious acts of its officers. As far as the case of Campbell v, Hampson applies, I consider it an authority against the plaintiff. That case was decided on the principle, that a sheriff, who was expressly commanded by the statute to commit a person in his custody to the common jail, and to a particular apartment in that jail, could not be charged as a trespasser in discharging that duty, because, by the misfeasance of the commissioners, the apartment in which he was directed to confine the person had not been provided,' by which it was impossible for him to perform the duty in the precise manner directed.
And in delivering the opinion, the court do distinctly intimate, that the party injured had a remedy against the commissioners, whose duty it was to have provided a separate room for debtors. If anything can be inferred from that case, applicable to this, it is that this plaintiff was not liable for an escape which he could not prevent, etc., that he might have defended himself against the suit of the creditor,- and turned him over to the commissioners, who were exclusively liable for the injury he had sustained. And again, I do not see how a decision that the sheriff is not liable to an action of trespass, in a particular case, and that he may defend *334 himself against it, can be improved as an authority to show that in a case of a different character, he may submit to a judgment, and then compel an indemnity from the county.
The books abound in cases, both English and American, in which recoveries have been had against sheriffs for escapes, but not an instance can be found in which they *have recovered an indemnity against the county. If it be replied that this is because the sheriffs in England are not bound to confine debtors in the public jail, but may, at their election, provide a private jail, or may repair the old one, if necessary, for which they are to be remunerated ; the same reply may be given, with equal force, in the present case. In Ohio, the county commissioners are authorized and directed to provide sufficient jails, and it is their duty to levy and collect money, or to contract debts for that purpose if necessary. Consequently, they stand in the situation of sheriffs in England, in relation to escapes, and ought to be answerable for the insufficiency of the jail, in the same manner, and to the same extent. They, as well as the sheriff, are county officers, and in providing public buildings, they all act as agents of the county.
If an escape happens in England, through the insufficiency of the jail, the sheriff must answer for it, and he has no recourse on the county. For the same reason, the commissioners in Ohio should be answerable without recourse. It is a just maxim, that “the reason of the law is the life of the law.” The sheriff, in the case put, is liable without recourse on the county. Why? Because he has been guilty of a misfeasance, in not providing a sufficient ¡ail. Therefore, and for the same reason, the commissioners should be liable without recourse, they having been guilty of a nonfeasance, in not providing a jail.
In every instance, within my knowledge, in which a county has been held liable for an escape, it has been made so by statute. It is by statute, the hundred in England, is made liable for robberies, in certain cases, and under our territorial government, a statute was adopted by the governor and judges, in August, 1792, declaring the counties liable for escapes that should happen through the insufficiency of the jail. The act pointed out the manner in which the money should be assessed and paid, and also the mode of commencing and conducting suits for the recovery thereof, in case the courts should not order it assessed and paid. The frauds that were practiced on the counties, under that law, by collusions be *335 tween plaintiffs and defendants, when no debts wore really due, and when defendants were utterly ^insolvent, became so appai’ent and oppressive, that the fii’st territorial legislature, in 1799, repealed the act, and no subsequent legislature has seen proper to revive it.
Prior to the adoption of that law, I believe no attempt was made to charge a county in such a case, and this is the first suit that has been brought for that pui’pose, within my knowledge, since the repeal of the law, although escapes have been numerous, for which the sheriffs have been held answerable to the persons injured. The natural inference is, that it has been the prevailing opinion that such actions could not be sustained at common law.
From the most careful view I have been able to take of this case, it appears to me that the county of Brown is not liable, either by statute, or by contract, to pay the money demanded, nor do I discerní that she has committed any tort to the injury of the plaintiffs, and I do not know of any ground, distinct from these on which the action can be sustained.
The duty and the power of the commissioners is created by statute. While they act within the scope of their powers, the county must be bound, but if they should make a contract, to remove the seat of justice, or should seize on pi-ivate property, for county purposes, contrary to law, the county would not be bound by the conti’act, or liable for the trespass ; they would be responsible in their pi’ivate capacities. The proposition, thex-efore, that “the act of the commissioners is the act of the county,” must be taken in a restricted sense. It would be mischievous, as well as unprecedented, to hold the county answerable for their tortious and illegal proceedings.†

Note by the Editor. — As to record evidence, see Gibbs if. Fulton, ii. 180, and note. The law of this case is recognized, vi. 13, and same principle, i. 119.